**SMITHSONIAN INSTITUTION,**
Petitioner,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

No. 85–400.

District of Columbia Court of Appeals.

Argued Feb. 25, 1986.
Decided Sept. 17, 1986.

Constance Wynn, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., and John F. Cordes, Dept. of Justice, Washington, D.C., were on the brief, for petitioner. Peter G. Powers, Gen. Counsel, Smithsonian Inst., Washington, D.C., also entered an appearance for petitioner.

Michael A. Milwee, Washington, D.C., for respondent.

Before FERREN, TERRY, and ROGERS, Associate Judges.

TERRY, Associate Judge:

The Smithsonian Institution seeks review of a decision by the Department of Employment Services awarding unemployment compensation benefits to Oliver Warren, a former Smithsonian employee who had been fired for misconduct. In notifying Warren of his proposed discharge, the Smithsonian stated four reasons why it had decided to fire him. The appeals examiner who heard the case below assumed that the four grounds were independent, so that any one of the four, if proven, would be sufficient to sustain Warren's discharge. The Department's Office of Appeals and Review, however, assumed that the four were mutually dependent, so that all four had to be proven before Warren's discharge could be upheld. The difference is critical because the Smithsonian did not prove all four, but it did prove at least one. If one was enough, *i.e.*, if the four grounds were independent, then proof of one would be sufficient to establish misconduct, and Warren would not be entitled to unemployment benefits.

In this court the Smithsonian argues that the Department erred (1) in failing to determine the precise reason or reasons why Warren was fired, and (2) in failing to decide whether the evidence supported a finding that Warren improperly worked at outside employment while he was "in a workers' compensation status." Because the Office of Appeals and Review misread the appeals examiner's decision, and because the appeals examiner failed to make findings on several material issues of fact, particularly on the issue of whether the four grounds for Warren's discharge were dependent or independent, we reverse the decision of the Department and remand the case for further proceedings.

## I

Oliver Warren was employed for almost twelve years as an animal keeper at the National Zoological Park (the Zoo), which is part of the Smithsonian. Early in 1984 the Zoo's coordinator for personnel began investigating a rumor that Mr. Warren was also working for Parking Management, Inc. (PMI), a parking garage company, on Sundays during the same hours he was on duty at the Zoo. On May 15, 1984, Dr. Edwin Gould, the Curator of Mammalogy, sent Warren a letter declaring his intention to fire Warren from his job as an animal keeper. The proposed discharge was based on "your (1) absence without leave (AWOL), (2) abandoning or leaving your post without proper authorization, (3) improper dual employment which impacts on your position at the National Zoological Park, and (4) working at outside employment while in a Workers' Compensation status." Facts supporting these allegations were set forth in some detail. On

June 27, after receiving Warren's response denying the allegations, the Smithsonian sent another letter to Warren stating that he would be removed from his position on June 30 for the reasons listed in Dr. Gould's May 15 letter.[1]

A few days later Mr. Warren filed a claim for unemployment benefits. His claim was denied by a claims deputy on the ground that he had been discharged from his job for "misconduct occurring in the course of work." *See* D.C.Code § 46–111(b) (1986 Supp.). Warren appealed, and a hearing was held before an appeals examiner. The examiner found:

[T]he charge that the claimant [Warren] possessed dual employment while working for the Zoological Park is supported by the evidence and the testimony of the claimant. Claimant did in fact maintain dual employment which was against the National Zoological Park's regulations and requirements. Accordingly, the burden to establish misconduct has been established by the employer.

On the basis of this finding, the examiner affirmed the claims deputy's denial of benefits. He also ruled, however, that the evidence was insufficient to support the charge that Warren had abandoned his post without proper authorization and that the Smithsonian's evidence was "not sufficient that the claimant was terminated for [being AWOL]." The appeals examiner did not address the charge (which Warren never contested) that Warren had worked at outside employment while in a workers' compensation status.

On a further appeal by Warren, the Office of Appeals and Review (OAR) reversed the appeals examiner's decision. It ruled

1. The June 27 letter, signed by the Acting Assistant Director for Animal Programs, stated in part:

In reviewing the above, my investigation finds that you were (1) absent without leave (AWOL), (2) that you repeatedly did abandon your duty post without proper authorization, (3) that your dual employment was improper in that it affects negatively your position at the National Zoological Park, and (4) your

behavior was improper as it relates to your Workers' Compensation status. I have considered your past record, including a letter of caution, in reaching my decision. After careful evaluation of this case, my decision is to remove you from your position as Animal Keeper, WG 5048–9, no sooner than thirty (30) days from your receipt of your proposed notice. The date of your removal will be June 30, 1984.

that under *Jones v. District of Columbia Unemployment Compensation Board*, 395 A.2d 392 (D.C.1978), a finding of misconduct must be based on the reasons given by the employer for the discharge. The OAR read the appeals examiner's decision as stating that the Smithsonian had failed to substantiate the AWOL charge. Because the AWOL charge was cited by the Smithsonian as one of the reasons for Warren's termination, the OAR concluded that the finding of misconduct was not based on the reasons given by the employer for the discharge and therefore ruled that Warren was eligible for unemployment benefits. From that decision the Smithsonian appeals.

## II

"Under the District of Columbia Administrative Procedure Act, the appeals examiner's decision must contain findings of fact, 'consist[ing] of a concise statement of the conclusions upon each contested issue of fact,' and conclusions of law. Both findings and conclusions must be 'supported by and in accordance with the reliable, probative, and substantial evidence.'" *Colton v. District of Columbia Department of Employment Services*, 484 A.2d 550, 551 (D.C. 1984), quoting from D.C.Code § 1–1509(e) (1981) (additional citation omitted). To meet these requirements, "(1) the decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings." *Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 402 (D.C. 1984) (citations omitted).

■ In this case the OAR granted benefits to Mr. Warren on the ground that the appeals examiner's finding of misconduct was not based on the reasons given by the employer for the discharge as required by

*Jones, supra,* since the appeals examiner had found the evidence insufficient to support the AWOL charge. The OAR plainly misread the examiner's decision. He did not rule that "the employer failed to substantiate the charge concerning AWOL," as the OAR stated in its decision; rather, the examiner found that the employer had not presented sufficient evidence to prove that Warren "was terminated for this reason," *i.e.,* that the employer had not shown a causal connection between Warren's being AWOL and his discharge.[2] Consequently, the OAR's decision, which is the final order of the Department, is not supported by substantial evidence, and we cannot affirm it. *See* D.C.Code § 1–1510(a)(3)(E) (1981).

■ The appeals examiner's decision cannot be sustained either because he failed to resolve several disputed issues of fact. A prerequisite to the denial of benefits in a misconduct case is that a finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge. *Jones, supra,* 395 A.2d at 395; *Green v. District Unemployment Compensation Board,* 346 A.2d 252, 256 (D.C.1975). Thus the appeals examiner must determine whether the particular reason given by the employer was in fact the basis of the employer's decision to fire the employee. *Jones, supra,* 395 A.2d at 397. When the employer states more than one reason, the examiner must ascertain whether *each* reason was an independent ground for the firing, or whether all of the reasons *together* constituted the "'critical mass' justifying discharge...." *See id.* at 396–397. The examiner in this case did not make that determination.

■ The Smithsonian argues that since the appeals examiner failed to make a finding concerning the precise reason or reasons why Warren was fired, a remand is necessary. The Department contends, on

---

**2.** Contrary to the OAR's interpretation, the examiner's findings seem to say that the employer did substantiate the AWOL allegations, but they are not entirely clear on this point. We direct

the examiner on remand to clarify his findings on the AWOL issue so that there will be no ambiguity as to what he did or did not find.

the other hand, that the Smithsonian failed to prove that each of its four stated reasons independently justified Warren's termination and, consequently, that a remand is unnecessary. The Department is correct in asserting that, as part of its burden of proving misconduct, an employer must make clear to the appeals examiner whether the reasons it has given for the employee's discharge are independent of one another. Under *Jones,* that is a material issue in any misconduct case in which the employer states more than one ground for discharge. The examiner in this case, however, never made a finding on that issue, as our cases require. *E.g., Curtis v. District of Columbia Department of Employment Services,* 490 A.2d 178, 179 (D.C.1985) ("The agency must make a finding of fact on each material issue of fact"); *Perkins, supra,* 482 A.2d at 402. We therefore agree with the Smithsonian that because the examiner failed to make such a finding, the case must be remanded to enable him to do so; "this court cannot fill the gap by making its own determination from the record...." *Colton, supra,* 484 A.2d at 552; *see Jones, supra,* 395 A.2d at 397. We see no need, however, to reopen the hearing, thereby giving the Smithsonian a second bite at the proverbial apple; rather, the examiner on remand shall make the necessary finding based on the existing record.

The Smithsonian also maintains that a remand is required because the appeals examiner failed to make a finding on the workers' compensation ground for dismissal. We agree. The examiner made no finding whatsoever on the issue of whether Warren improperly worked at outside employment "while in a Workers' Compensation status," as the Smithsonian alleged and as Warren never disputed. *Colton* dictates that we remand for findings on that issue as well.

### III

Since a remand is necessary, we deem it appropriate to comment on three other matters which will need to be addressed on remand.

■ *First,* before a claim for benefits may be denied on the ground of misconduct, it must be shown that the claimant was "on notice that if he should proceed with his conduct, 'he will damage some legitimate interest of the employer for which he could be discharged.'" *Jones, supra,* 395 A.2d at 395 (citations omitted); *accord, e.g., Colton, supra,* 484 A.2d at 553. Mr. Warren testified at the hearing that he had an understanding with his supervisor concerning his PMI job so that, in effect, he had permission to leave the Zoo during his lunch break to open the PMI garage and then return to the Zoo to complete his shift. In order to determine whether Warren was on notice that his conduct was damaging a legitimate interest of his employer for which he could be discharged, the appeals examiner had to ascertain whether in fact he had permission to leave the Zoo and open the garage during his lunch break. The appeals examiner failed to make a finding on this issue; he should do so on remand.

■ *Second,* the Smithsonian presented evidence that Warren sometimes began his lunch break early in order to go and open the PMI garage. Warren's supervisor testified that under established Zoo rules, which were posted in the employees' work area, animal keepers were required to take their breaks at specified times unless given explicit permission to do otherwise, and that Warren did not have such permission. These facts, it asserts, in part provide the basis for the claims that Warren was AWOL and that he abandoned his post without prior authorization. Warren testified, on the other hand, that the rules concerning breaks were not enforced on weekends because a reduced work force had to attend to the animals' needs, which do not fit a set schedule. Accordingly, Warren maintained that he had not broken the

rules.[3] Finally, the Smithsonian presented evidence that the curator on duty looked for Warren on Sunday afternoon, May 6, in all the places where he should have been but could not find him; Warren, however, disputed that he was absent. The appeals examiner failed to resolve any of these factual disputes; they should be resolved on remand.

*Third,* if the appeals examiner on remand finds that each of the reasons given by the Smithsonian was an independent ground for Warren's discharge, the examiner should also clarify what he meant when he ruled that the Smithsonian had met its burden of proving misconduct, in that the evidence (including Warren's own testimony) showed that Warren "did in fact maintain dual employment which was against the National Zoological Park's regulations and requirements." If the examiner meant that the Smithsonian proved that Warren held "improper dual employment which impacted on his position at the National Zoological Park," one of the Smithsonian's four stated reasons for firing him, then his finding of misconduct would be based on the reasons given by the employer for Warren's discharge, as *Jones* requires. If, however, he meant that Warren was fired because he maintained dual employment in violation of Zoo regulations, then the finding of misconduct would not necessarily be based on the reasons given by the employer. Nor would such a finding be supported by substantial evidence, since there was no evidence of a rule against dual employment. The examiner's ruling on this point needs to be more clearly stated.[4]

**IV**

Because the appeals examiner failed to make findings on several material issues of fact, we remand the case to the Department for further proceedings consistent with this opinion. The case shall be referred to the original appeals examiner, who shall make the necessary findings and then rule *de novo* on Warren's claim. Because a full hearing has already been held, the examiner shall base his decision on the record already made.[5] The parties, however, may submit further briefs or written arguments if authorized to do so by the examiner. *See Henry J. Kaufman & Associates, Inc. v. District of Columbia Department of Employment Services,* 503 A.2d 684, 686 (D.C.1986). The examiner's ruling shall be subject to the usual appellate review.

*Reversed and remanded.*

an had failed to prove that Warren was terminated for being AWOL, and (see note 2, *supra* ) that Warren was in fact AWOL. The several findings of fact which the examiner failed to make must be made before we can reach those questions.

3. Under the Department's regulations, if the basis for a claimant's disqualification from benefits is willful violation of an employer's rules, the Department must make a finding that the rules are "consistently enforced by the employer." 18 DCRR § 4613.4 (1983); *see Curtis, supra,* 490 A.2d at 179.

4. We do not now decide whether the appeals examiner was correct in concluding that the Smithsonian had failed to present sufficient evidence to prove that Warren abandoned his post without prior authorization, that the Smithsoni-

5. Our decision assumes that the original appeals examiner is still available. If he is not, a new evidentiary hearing must be held. *See Stevens Chevrolet, Inc. v. Commission on Human Rights,* 498 A.2d 546 (D.C.1985).