**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**No. 98–AA–505.**

District of Columbia Court of Appeals.

Argued April 6, 2000.
Decided Sept. 5, 2002.

---

Sonia A. Bacchus, Associate General Counsel, Washington Metropolitan Area Transit Authority, with whom Robert L. Polk, General Counsel, and Carol B. O'Keeffe, Deputy General Counsel, were on the brief, for petitioner.

Michael A. Milwee for respondent.

Before TERRY, STEADMAN, and FARRELL, Associate Judges.

PER CURIAM.

Petitioner-employer, the Washington Metropolitan Area Transit Authority (WMATA), challenges a decision of the Office of Appeals and Review (OAR) of the Department of Employment Services (DOES) reversing an appeals examiner's denial of unemployment compensation benefits to Christopher Lizzi and awarding him benefits. The examiner had determined that Lizzi was ineligible for benefits, because he had been properly terminated for gross misconduct. *See* D.C.Code § 51–110(b)(1) (2001). We agree with WMATA that in essence OAR substituted its own view of the evidence for the examiner's, contrary to the limitations on its statutory review authority. *See* D.C.Code § 2–510(a)(3)(E) (2001). We therefore va-

cate OAR's decision, but conclude that a remand is necessary in light of OAR's alternate determination that the appeals examiner had conducted the hearing in an unfair manner.

The dispute in this case surrounds the failure of Lizzi, a wheelchair lift mechanic with WMATA, to attend two medical examinations WMATA had scheduled in order to evaluate an ankle injury that Lizzi claimed required him to take sick leave. Neither the appeals examiner nor OAR questioned the importance of these examinations, because the claim of ankle injury was made against the background of repeated and sustained job absences by Lizzi during the previous three years. OAR therefore did not dispute WMATA's contention, accepted by the examiner, that if Lizzi had in fact deliberately missed the two medical appointments without adequate excuse, and upon adequate notice that failure to attend them could mean his termination, his actions would constitute "gross misconduct" within the meaning of 7 DCMR § 312.3 (2002). *See generally Chase v. District of Columbia Dep't of Employment Servs.*, 804 A.2d 1119, 1122 (D.C.2002).[1]

Lizzi was first directed to attend a medical examination by WMATA's Associate Medical Director, Dr. O'Donnell, on August 14, 1997. He did not appear for it. OAR concluded on review that Lizzi, who lived in Maryland but was on vacation in New Jersey at the time, "did not receive notice of that appointment until a few hours prior to the appointment time on August 14, 1997," and thus that WMATA's "notice to [Lizzi] of his alleged failure to keep the August 14, 1997 appointment cannot be found reasonable." This determi-

---

1. 7 DCMR § 312.3 defines gross misconduct as "an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's in- terests, shows a repeated disregard for the employee's obligation to the employer or disregards standards of behavior which an employer has a right to expect of its employee."

nation, however, is flatly contrary to the appeals examiner's finding that Lizzi had been informed of the medical appointment on August 11, three days earlier. Ample evidence supports that finding, and, indeed, DOES concedes in this court that "Mr. Lizzi learned of the August 14 medical appointment on or about August 11, 1997." When substantial evidence in the record as a whole supports a finding of fact by the appeals examiner, the OAR is bound by that determination. *See, e.g., Harker v. District of Columbia Dep't of Employment Servs.,* 712 A.2d 1026, 1029 (D.C.1998). OAR therefore erred in discounting the examiner's finding as to the first medical examination.

OAR's second error was of a similar nature. The appeals examiner found, and OAR agreed, that when Lizzi missed the first medical appointment a second one was scheduled for August 18 with Dr. O'Donnell, which Lizzi attended. OAR accordingly reasoned:

> With respect to the appointment on August 18, 1997, [Lizzi] offered ... uncontradicted testimony that he ... arrange[d] for someone to drive him from New Jersey to Washington, D.C. that day where he was examined by employer's doctor. Thus, it cannot be [con-]cluded that employer has offered substantial evidence ... that [Lizzi] failed to submit to the scheduled medical examinations.

Altogether ignored by this analysis, however, are the findings made by the examiner with respect to the events succeeding the examination on August 18.

Dr. O'Donnell was unable to find any indication that Lizzi had a sprained ankle, and therefore made an appointment for him to see an orthopedic surgeon the next day for an independent medical examination. When she attempted to give him the surgeon's address and phone number, however, he refused to accept it and instead claimed he was unable to attend the appointment because he was under the influence of Percodan and could not drive down from New Jersey again.[2] He offered no apparent explanation why he could not remain in the area overnight, particularly since he resided in Maryland.[3] As a result, Lizzi failed to attend the independent medical examination on August 19. This evidence, which was key to the examiner's finding that Lizzi missed *repeated* medical appointments necessary to evaluate his absence from work, is not mentioned by OAR, and vitiates its conclusion that the examiner lacked substantial evidence to support the finding of missed appointments.

OAR erred yet again in concluding that "the record does not contain substantial evidence" that Lizzi was on notice "that if he persisted in his failure to submit to the ordered examination, he [would] be discharged." WMATA does not dispute that before Lizzi could be denied benefits for gross misconduct, he had to be "on notice that if he should [miss the medical appointments], he [would] damage some legitimate interest of [WMATA] for which he could be discharged." *Smithsonian Inst. v. District of Columbia Dep't of Employment Servs.,* 514 A.2d 1191, 1195 (D.C.

---

2. Later, Lizzi denied to WMATA that he had even been aware of Dr. O'Donnell's attempt to set up the August 19 examination because he was in pain and on Percodan medication. Like WMATA, the appeals examiner rejected this claim that he did not know of the appointment.

3. In its brief on appeal DOES merely asserts that "[t]here is ... no dispute that [WMATA] had been advised that Mr. Lizzi had to 'hire' an individual to drive him to the examination on August 18 and would obviously have to do so again."

1986), quoting *Jones v. District of Columbia Unemployment Comp. Bd.*, 395 A.2d 392, 395 (D.C.1978). WMATA contends, however, that substantial evidence supports the appeals examiner's finding that Lizzi knew "the consequences of not appearing" for the examinations, *i.e.*, that he could be fired. WMATA is correct. Lizzi himself testified that he had been told by WMATA's Deputy General Manager that if he failed to attend the August 18 appointment, he would be terminated. Following that examination, Dr. O'Donnell told him that she would inform his supervisor of his refusal to agree to the follow-up examination the next day. Moreover, Lizzi telephoned three separate supervisors on August 18 explaining that he was too ill to attend the August 19 appointment (an excuse the examiner found unsupported by the evidence), further indicating his understanding that—as in the case of the August 18 examination—failure to appear for the independent medical examination could mean his discharge.

DOES's brief in this court does not so much dispute the examiner's findings that Lizzi missed the two appointments as it questions whether this amounted to gross misconduct justifying his discharge. In effect DOES argues that Lizzi's compliance with the rescheduled appointment on August 18 "neutralized" his earlier failure, leaving only a single missed appointment (August 19) as the ground—an inadequate one—for his termination. As we have seen, however, this is not the basis on which OAR reversed the examiner's determination; it did not take issue with WMATA's contention that if he deliberately missed two medical appointments (though making up one) critical to evaluating his latest claim of inability to work, he could be discharged for gross misconduct provided he had been warned of that possibility. Had OAR's conclusion at the administrative level—as distinct from its attorney's suggestion on appeal—been that a pair of missed medical appointments by an employee warned of the consequences, without more, is still not enough to constitute gross misconduct rather than the lesser—and less disqualifying—"misconduct," *see* D.C.Code § 51–110(b)(2), this court would be obliged to come to grips with that conclusion under the appropriate standards of review. *See, e.g., Bublis v. District of Columbia Dep't of Employment Servs.*, 575 A.2d 301, 303 (D.C.1990). But that was not the basis of OAR's decision, and we decline to substitute it for the mistaken disagreement with the examiner's factual findings that formed the basis of OAR's decision.[4]

There is, however, an important additional aspect of OAR's decision to be addressed. After reviewing the record, including listening to the audiotapes of the hearing testimony, OAR concluded that "during the course of the hearing, the . . . [e]xaminer failed to maintain a posture of impartiality and a standard of objectivity as required under 7 DCMR Section 306.7 . . . in that she repeatedly interrupted claimant in presenting his testimony, as well as on his cross-examination of employer's witnesses." OAR did not illustrate this lack of impartiality by any references to the record. Nor, more importantly, did it state whether this procedural impropriety alone was sufficient to require reversal of the examiner's decision. Nevertheless, it is the Board and not this court which has primary supervisory responsibility over the conduct and fairness of hearings

---

4. Neither will we entertain the suggestion in DOES's brief that WMATA's stated reason for dismissal was "pretextual," in that it simply sought to rid itself of an employee who had a history of abusing his acquired sick and vacation leave. This argument was implicitly rejected by the appeals examiner, and OAR did not purport to lend any credence to it.

conducted by DOES examiners. Thus we are loath to second-guess a judgment by OAR that the examiner exceeded her admittedly broad authority in conducting the hearing[5] and assumed a partisan role. We accordingly think that the proper course for us is to remand the case to OAR for a determination of whether its conclusion as to the unfairness of the proceedings was intended as an independent basis for reversal of the examiner's ruling. If it was—and if OAR adheres to that conclusion on remand—then OAR may direct whatever additional proceedings before an appeals examiner it deems appropriate in the case.[6] What OAR may not do, consistent with our preceding analysis, is vacate the examiner's decision *and* direct an award of benefits to Lizzi. Any such award must be contingent on the outcome of the further proceedings OAR directs, if any, as well as any review thereof.

Consequently, the decision of OAR is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

5. *See Bethlehem Steel Co. v. National Labor Relations Bd.*, 74 App. D.C. 52, 62, 120 F.2d 641, 651 (1941) ("It is the function of an examiner ... to see that the facts are clearly and fully developed. He is not required to sit idly by and permit a confused or meaningless record to be made.").

6. We note that in objecting to OAR's proposed final decision, WMATA initially took the position that "[i]f in fact the Appeals Examiner failed to maintain a posture of impartiality ... as required, perhaps this case should be remanded to the Appeals Section for a new hearing."