Charlita BROWN, Petitioner,

v.

CORRECTIONS CORPORATION OF AMERICA, Respondent.

No. 06–AA–71.

District of Columbia Court of Appeals.

Submitted Jan. 29, 2008.

Decided Feb. 7, 2008.

Anne J.A. Gbenjo, filed a brief, for petitioner.

Dannie B. Fogleman, Washington, DC, filed a brief, for respondent.

Before FARRELL, GLICKMAN, and FISHER, Associate Judges.

FISHER, Associate Judge:

Petitioner Charlita Brown asks us to review a decision of the Office of Administrative Hearings ("OAH") which held that she was ineligible for unemployment benefits because she had been terminated from her most recent work for gross misconduct. *See* D.C.Code § 51–110(b) (2001); 7 DCMR § 312.4k (2003). We reverse and remand to OAH for further proceedings.

## I.

Although they reached the same result, the claims examiner's initial determination and the Administrative Law Judge's ("ALJ") final order were based on different grounds. After the claims examiner determined that petitioner had been discharged from her job with the Corrections Corporation of America ("CCA") for "falsification of records," and that this constituted gross misconduct, petitioner appealed to OAH. Purporting to "affirm" that decision, the ALJ in fact found that CCA had failed to meet its burden of proving that petitioner had falsified documents. Nevertheless, the ALJ found that CCA had "met its burden of proof to establish that it terminated [petitioner's] employment for gross misconduct for repeated unexcused tardiness and absences after having been warned, in violation of 7 DCMR 312.4k."

This confusion over the grounds for termination is reflected throughout the record. For example, Assistant Warden Banks "asserted that when it appeared that [petitioner] had again submitted falsified documents to attempt to support absences from work in November 2004, [CCA] decided, after investigation, to terminate [petitioner's] employment."[1] Warden Figueroa's letter of April 27, 2005, informed petitioner that her termination was "based on [her] violation of policy 3–3 Standards of Business Ethics and Conduct." (Because CCA failed to introduce a copy of that policy, we do not know exactly what it covers.) The payroll termination form gives a "brief explanation" for termination: "failed to appear/call/falsifying documents."[2] Petitioner testified at the

1. The Certified Narrative of Relevant Proceedings and Evidence prepared by the ALJ states that "[b]ased on the number of opportunities [CCA] had given [petitioner] to improve her attendance, the apparent forgeries in the documents [petitioner] submitted to excuse her absences, *and* [petitioner's] repeated failures to appear for work when scheduled, *including seventeen absences in* the prior 30 days, not including scheduled days off, Warden Banks testified that [CCA] determined to terminate [petitioner's] employment." (emphasis added).

2. It is not clear from the record whether petitioner received a copy of the payroll termination form at the time she was fired.

hearing before the ALJ that "Warden Figueroa, the deciding official on her termination from her job with [CCA] on April 22, 2005, did not tell her that she was being terminated for her absences and tardiness, but for falsifying documents." The president of the National Professional Corrections Employees Union, who represented petitioner in several disciplinary proceedings at CCA, testified that problem solving notices "relating to [petitioner's] tardiness and absences[ ] were not a part of [the] internal hearing process leading to [petitioner's] termination, only the documents that appeared to have been forged." These are only examples of the confusion; we could provide additional illustrations.

On appeal, OAH engaged in a *de novo* review of the claims examiner's determination. *See Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 179–80 (D.C.2006). After hearing evidence that petitioner should be disqualified from receiving benefits, the ALJ found that CCA failed to meet its burden of proof "on the issue of whether [petitioner] forged documents . . . ." Likewise, the ALJ found that CCA "failed to establish a rule or policy violation" to support the claim that petitioner was terminated for a violation of Policy 3–3. However, petitioner did not dispute that she had received "multiple problem solving notices going back to 2002" and repeated warnings about absence and tardiness. Relying on this evidence, the ALJ found that gross misconduct had been established, citing *Shepherd v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1184, 1186 (D.C.1986) ("Attendance at work is an obligation which every employee owes to his or her employer, and poor attendance, especially after one or more warnings, constitutes misconduct sufficient

to justify the denial of a claim for unemployment benefits.").

## II.

Our case law has established two fundamental requirements in situations like this. First, "[a] prerequisite to the denial of benefits in a misconduct case is that a finding of misconduct must be based fundamentally on the reasons specified by the employer for the discharge." *Smithsonian Institution v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1191, 1194 (D.C.1986) (citing *Jones v. District of Columbia Unemployment Compensation Board*, 395 A.2d 392, 395 (D.C. 1978)); *accord, Chase v. District of Columbia Dep't of Employment Servs.*, 804 A.2d 1119, 1122–23 (D.C.2002). The ALJ "must determine whether the particular reason given by the employer was in fact the basis of the employer's decision to fire the employee." *Smithsonian Institution*, 514 A.2d at 1194. Second, "[w]hen the employer states more than one reason, the [ALJ] must ascertain whether *each* reason was an independent ground for the firing, or whether all of the reasons *together* constituted the 'critical mass justifying discharge.'" *Id.* (emphasis in original; citing *Jones*, 395 A.2d at 397). Although, as noted, the ALJ found that "CCA has met its burden of proof to establish that it terminated [petitioner's] employment for gross misconduct for repeated unexcused tardiness and absences after having been warned . . . ," this sentence is too ambiguous to satisfy the "particular reason" and "independent ground" requirements of *Smithsonian*.[3] Thus, the final order of the ALJ fails to resolve issues of material fact. *See Rodriguez*, 905 A.2d at 180 (OAH must, among other things, make findings

---

**3.** Although the ALJ found "repeated unexcused tardiness and absences," she did not find, as the Assistant Warden asserted, that there had been "seventeen [presumably unexcused] absences in the prior 30 days." See

note 1, *supra*. Rejecting CCA's evidence that certain documents had been falsified, the ALJ considered "absences for court appearances and her sick child [to] be excused . . . ." Some of these "excused" absences occurred

of fact on each contested issue of material fact).

We therefore remand for further, limited proceedings. *See Colton v. District of Columbia Dep't of Employment Servs.*, 484 A.2d 550, 552 (D.C.1984) ("If the agency fails to make a finding on a material, contested issue of fact, this court cannot fill the gap by making its own determination from the record, but must remand the case for findings on that issue."). Although she may decide that the present record is sufficient, the ALJ is free to receive additional evidence relevant to making the necessary findings. However, OAH shall not reopen the issues of misconduct based on falsification of documents or a violation of Policy 3–3. *See Smithsonian Institution*, 514 A.2d at 1195. CCA has failed to meet its burden of proof on these issues, and is not entitled to "a second bite at the proverbial apple." *Id.*[4]

For the reasons discussed, we reverse the decision of the OAH and remand for further proceedings not inconsistent with this opinion.[5]

*So ordered.*

in November 2004, within the thirty-day period to which the Assistant Warden referred. See Exhibit 203 (dated December 7, 2004). In light of our decision to remand, we do not reach the question of whether there is substantial evidence to support the finding quoted above.

4. CCA twice notes that petitioner is "only appealing issues that relate to her dismissal for poor attendance." Respondent's Brief at 1 n. 2 & 2 n. 3. More to the point, CCA has not petitioned for review of the findings that it failed to prove misconduct based on falsification of documents or a violation of Policy 3–3.

5. We do not resolve the other issues presented by petitioner, including whether the ALJ

abused her discretion in refusing to admit the Collective Bargaining Agreement (CBA). Of course, it is not the purpose of these proceedings to determine whether CCA violated the CBA when it terminated petitioner. The ALJ may decide in the first instance whether the CBA is relevant to the limited issues to be addressed on remand.