Adrianne V. DOYLE, Petitioner,

v.

NAI PERSONNEL, INC. and District of Columbia Department of Employment Services, Respondents.

Nos. 08–AA–1250, 08–AA–1251.

District of Columbia Court of Appeals.

Submitted March 23, 2010.

Decided April 1, 2010.

Adrianne V. Doyle, pro se.

Respondent NAI Personnel, Inc., did not file a brief.

Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Michael A. Milwee, Senior Assistant Attorney General, filed a motion for summary affirmance for respondent, the District of Columbia Department of Employment Services.

Before PRYOR, TERRY, and FARRELL, Senior Judges.

FARRELL, Senior Judge:

These petitions for review present once again the issue of whether a claim for unemployment compensation was properly denied on the ground that the claimant had lost her job because of action constituting "gross misconduct." See D.C.Code

§ 51–110(b)(1) (2001); 7 DCMR § 312.3.[1] Primarily in light of our decision in *Odeniran, supra* note 1, we reverse the determination of gross misconduct by an Administrative Law Judge (ALJ) in this case and remand for consideration of an unresolved issue of whether petitioner "abandoned" or voluntarily left her job rather than having been discharged. *See* D.C.Code § 51–110(a).[2]

## I.

NAI Personnel (NAI) is a staffing corporation providing temporary or permanent personnel to government and business clients. Petitioner was employed by NAI from December 21, 2007, until the spring of 2008. Her first, and only, placement by the company was with Sun Trust Bank which needed a temporary clerk employee; the assignment was to last until Sun Trust filled the position with a permanent employee.

Following an evidentiary hearing, the ALJ found that NAI had in effect a workplace rule (set forth in its Code of Professionalism) requiring assigned employees to notify it as soon as their temporary placements ended; that petitioner knew of the existence of this rule but failed to notify NAI when her work for Sun Trust ended on April 25, 2008, or thereafter; and that NAI learned of the termination only incidentally on May 9, 2008. Based on these findings, which we will not disturb,[3] the ALJ concluded that petitioner's discharge from employment by NAI (as we discuss in part III, *infra*, the ALJ also opined that petitioner "could be" found to have left her job voluntarily) resulted from her having "deliberately and willfully violated Employer's interests, as well as having deliberately and willfully disregarded the standard of behavior that Employer reasonably expected of its employees; namely that employees report for work." The ALJ therefore denied her claim for benefits under D.C.Code § 51–110(b)(1).

## II.

■ DOES, in keeping with the ALJ's conclusion, argues that "[c]learly ... if the employer's business is placing temporary employees [as NAI's was], that business interest is violated when employees do not contact it for reassignment once their placements end" (Mot. for Summ. Aff. at 4). We do not dispute that point. It may also be conceded, on this record, that petitioner deliberately and willfully— *i.e.*, knowingly and without proffered excuse—failed to notify NAI when her as-

1. Perhaps as a sign of the times, the court has grappled repeatedly with related issues in the recent past. *See, e.g., Odeniran v. Hanley Wood, LLC*, 985 A.2d 421 (D.C.2009); *Morris v. United States Envtl. Prot. Agency*, 975 A.2d 176 (D.C.2009); *Larry v. Nat'l Rehab. Hosp.*, 973 A.2d 180 (D.C.2009).

2. The second, consolidated petition (No. 08–AA–1251) concerns the ALJ's order granting the Department of Employment Services (DOES) recoupment of benefits paid to petitioner subsequent to an initial ruling in her favor by a claims examiner in this case. That order too must be vacated subject to reconsideration (and possible reinstatement) depending on the outcome of the further proceedings we direct.

3. The only finding giving us pause has to do with the existence of the notification rule. The ALJ found NAI's Code of Professionalism "confusing" in how it set forth the requirement (*i.e.*, it was "couched in terms of a condition for the employee's receipt of unemployment compensation," rather than of possible discharge for violation of the requirement). Nevertheless, the ALJ found that petitioner knew of her obligation to notify NAI when her assignment ended, and evidence in the record supports that finding. *See generally Dell v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 102, 106–07 (D.C.1985).

signment with Sun Trust ended.[4] Lastly, 7 DCMR § 312.3 indeed defines gross misconduct that precludes current benefits to include "deliberately or willfully threaten[ing] ... the employer's interests ... or disregard[ing] standards of behavior which an employer has a right to expect of its employee." The issue before us, nevertheless, is whether petitioner's single failure to notify NAI that her assignment with Sun Trust had finished qualifies as gross misconduct either inherently or because attended by aggravating circumstances. Under our decisions, an employer seeking to prove that its business interests were jeopardized by an employee's action enough to warrant a finding of gross misconduct must make a heightened showing of seriousness or aggravation, lest the statutory distinction between gross and "simple" misconduct, in our law since 1993, be erased.[5] On this record, NAI has not made that showing.

Whether an employee was rightly discharged for "gross" misconduct is, we have said, an issue "distinct" from whether the employer has "a reason to discharge [the employee]," *Larry, supra* note 1, 973 A.2d at 184, as well as from whether that reason permits the lesser denial of benefits for ordinary "misconduct." *See Odeniran, supra* note 1, 985 A.2d at 428 (the drafters of the unemployment statute "could not have intended [an] outcome [that] would eviscerate the distinction between gross and simple misconduct"). *Odeniran* provides critical guidance on whether petitioner's single omission to notify NAI of her renewed availability for assignment—intentional though this may have been—rose to the level of gross misconduct.

*Odeniran* concerned an employee who "purposely failed to do his job during the course of [an] entire day despite getting talkings-to from" two supervisors about his inaction. 985 A.2d at 427; *see id.* at 425 (accepting ALJ's finding that Odeniran "was not performing his assigned duties ... even though [his superior] had spoken to him several times to express his 'concern' "). At the same time, we pointed out, it was not shown that this "willful nonperformance ... was other than an isolated incident" of disobedience by the employee, *id.* at 429; *see id.* at 430 ("the record does not reveal ... that Odeniran *repeatedly* disobeyed any orders" (emphasis in original)); nor "did [the employer] contend that its business had suffered serious consequences as a result" of it. *Id.* at 429. In these circumstances, we focused on whether an employee's "intentional fail[ure] to do his work throughout a single day" despite being admonished by his superiors was gross misconduct within the statute and regulation. *Id.* at 422. We held that it was not. Emphasizing the need to preserve the distinction between levels of misconduct which the lawmakers had made significant, and deriving from 7 DCMR § 312 itself evidence that "the types of conduct that constitute gross misconduct are narrower than what might come within a literal definition of that phrase," *id.* at 426, we explained that "to constitute gross misconduct, an employee's misdeeds must be serious indeed," *id.* at 427, "far more egregious than every act that literally might be viewed" as, for example, jeopardizing an employer's interests. *Id.* at 426. Moreover, "that the

---

4. The ALJ disbelieved petitioner's contrary testimony that she had endeavored to notify NAI when the placement ended.

5. The burden of proof on the issue lies, of course, with the employer. *Morris, supra*

note 1, 975 A.2d at 181. The history of the pivotal statutory change is summarized in *Chase v. District of Columbia Dep't of Employment Servs.*, 804 A.2d 1119, 1121 (D.C.2002).

dismissed employee acted intentionally is only a necessary, not a sufficient, condition for a finding of gross misconduct." *Id.* at 428. Thus, because "our cases holding that an employee engaged in gross misconduct involved circumstances far more extreme than those presented here," *id.* at 429, we held that the employer's inability "to do more than show that [Odeniran] intentionally failed to work" for a single day despite warnings, *id.* at 430 n. 10, made its showing of gross misconduct inadequate as a matter of law.

This case follows *a fortiori* from *Odeniran.* Petitioner's intentional failure to notify NAI once that she was available for reassignment, while contrary to NAI's business interests, falls short—in terms of "serious[ness]" or "egregious[ness]" *id.* at 426—even of the deliberate refusal to do work despite reproof found insufficient in *Odeniran.* But even if it was of the same quality, it was an "isolated incident" and NAI did not try to show that its staffing ability "had suffered serious"—or indeed any—"consequences as a result" of petitioner's unavailability. *Id.* at 429. The decisions we distinguished in *Odeniran,* see *id.* at 429, likewise involved misconduct more "serious indeed" than petitioner's failure to report her availability for reassignment without any proven effect on NAI's operation. In short, her failure to comply with NAI's notification rule may well furnish the basis for a finding of simple misconduct (something NAI is free to argue on remand), but no more reveals features of gravity or aggravation enough to constitute gross misconduct than did the behavior in *Odeniran.*

Significantly, the court in *Odeniran* did "not hold ... that poor performance on a single day can never constitute gross misconduct." *Id.* at 430 n. 10. Thus the sweep of statements in the opinion (quoted above) such as that gross misconduct would have to be "far more egregious" or "far more extreme" than the misconduct shown in that case is ambiguous and must be settled by future decisions. Inarguably, though, *Odeniran* controls the issue of gross misconduct *vel non* in this case.

### III.

▮ Almost by the way, the ALJ further wrote that petitioner's actions, including her failure to notify NAI, "could be construed to be 'voluntary leaving' or 'abandonment' of her job" which would disqualify her from benefits under D.C.Code § 51–110(a) (an employee is ineligible "who left his most recent work voluntarily without good cause"). DOES likewise asserts the "great likelihood" that petitioner could have been "disqualified pursuant to ... § 51–110(a) because her failure to contact NAI means that she did not take reasonable steps to maintain her employment," citing *Freeman v. District of Columbia Dep't of Employment Servs.,* 568 A.2d 1091, 1093–94 (D.C.1990). Given the ALJ's failure to rule more than hypothetically on this issue and the lack of clarity of the record bearing on it, we resist any invitation to decide the point now. On the one hand, the *Freeman* case bears only small resemblance to this one, in that the employee there, by "chang[ing] her status from full-time banquet server to on-call banquet server," *id.* at 1092, had "voluntarily placed herself in an unprotected position with the knowledge that she would be given work only if it was available" and thereby "set into motion the process which caused her unemployment." *Id.* at 1093. Petitioner's failure to notify NAI of the cessation of her temporary assignment scarcely resembles the conduct of an employee who "voluntarily removed herself from the benefits of full-time status ... to follow other pursuits, including school and other employment." *Id.* On

the other hand, NAI presented testimony—murky, to be sure—that petitioner was not fired when she had merely failed to notify it of her renewed availability for assignment, but rather that her eligibility for further work ended, voluntarily on her part, when she chose to pursue unemployment compensation instead of recontacting the NAI. The ALJ himself seems to have been of two minds whether petitioner was indeed discharged or had voluntarily (though mistakenly) hoped to obtain unemployment benefits in lieu of work that was still available to her with NAI. This question will have to be resolved in further proceedings before the ALJ should NAI pursue them. Failing that, the ALJ may consider the "lesser included" issue, *see Odeniran*, 985 A.2d at 430, of whether petitioner's conduct amounted to simple misconduct justifying the more limited denial of benefits under § 51–110(b)(2). But the finding of gross misconduct may not stand.

*Orders reversed; case remanded for further proceedings not inconsistent with this opinion.*[6]

---

**6.** DOES's motion for summary affirmance is     accordingly denied.