703 So.2d 1158 (1997)
Andre V. POOLE, Appellant,
v.
J.B. HUNT TRANSPORT, INC., and Florida Unemployment Appeals Commission, Appellees.
No. 96-04383.
District Court of Appeal of Florida, Second District.
December 10, 1997.
Andre V. Poole, pro se.
John D. Maher of Florida Unemployment Appeals Commission, Tallahassee, for Appellee Unemployment Appeals Commission.
ALTENBERND, Acting Chief Judge.
Andre V. Poole appeals the order of the Unemployment Appeals Commission affirming the appeals referee's determination that he was disqualified from receiving unemployment compensation benefits because his employer, J.B. Hunt Transport, Inc. (J.B. Hunt), discharged him for misconduct connected with his work. We reverse because the employer failed to provide competent, substantial evidence of misconduct, as defined in section 443.036(26)(b), Florida Statutes (1995).
*1159 Mr. Poole worked for J.B. Hunt as an over-the-road truck driver until he was fired on March 26, 1996. J.B. Hunt responded to Mr. Poole's claim for unemployment compensation with an unusual letter, including several exhibits, that ultimately was introduced into evidence at Mr. Poole's appeal hearing. The letter is a form document that J.B. Hunt apparently files in response to many unemployment claims. In a conclusory fashion, it states that Mr. Poole was involved in three "preventable" accidents during a period of 2½ months, resulting in damages totaling $6,600. Neither the form letter nor any of the attachments explain how these accidents were anything other than simple acts of misjudgment while driving. There is no evidence, for example, that Mr. Poole ever received a citation for speeding, reckless driving, or even for a minor traffic offense. The letter concludes: "His/Her blatant intentional irresponsible behavior gave J.B. Hunt Transport no choice but to discharge immediately."
The referee's findings of fact in their entirety state:
The claimant was employed as an over the road truck driver with the employer, a transporter for dry grocery goods, from June 19, 1995, through March 26, 1996. On January 2, 1996, the claimant backed his truck into a parking spot and hit the truck parked next to him. The employer counselled the claimant regard ing this incident and placed him on six months probation. On January 23, 1996, the claimant was driving approximately 50 miles per hours [sic] on an icy road and lost traction, causing an accident. The claimant was suspended for two weeks for this incident. On March 20, 1996, the claimant was attempting to maneuver his truck in a parking lot and hit another stationary pickup truck. The claimant was discharged on March 26, 1996, for his accumulation of preventable accidents.
The record, thus, establishes that Mr. Poole's "blatant intentional irresponsible behavior" comprised two incidents in which he made contact with other vehicles while attempting to park his truck and one loss of control on ice. The loss of control on ice would appear to be the most significant event. Mr. Poole was driving 50 miles per hour, which was deemed by J.B. Hunt to be an excessive speed for the icy conditions. J.B. Hunt's exhibits reveal that this incident occurred on an interstate, and there is no evidence that Poole was exceeding a posted speed limit or that he was cited for any traffic infraction.
This case is most similar to Williams v. Unemployment Appeals Commission, 484 So.2d 89 (Fla. 5th DCA 1986), which reversed a denial of benefits for a bus driver who was involved in several traffic accidents. We distinguish Trinh Trung Do v. Amoco Oil Co., 510 So.2d 1063 (Fla. 4th DCA 1987), which involved a driver of an oil tanker who received traffic citations and "consistently operated his gasoline-filled tank truck in excess of the legal speed limit." Id. at 1065.
J.B. Hunt emphasized its need to comply with "the Federal Motor Carrier Safety Regulations which gives [sic] the minimum qualifications for persons who drive motor vehicles for" motor carriers. See generally Federal Motor Carrier Safety Regulations, 49 C.F.R. § 391.15 (1997) (listing conduct that disqualifies drivers). There is nothing in this record to establish that these regulations required J.B. Hunt to fire Mr. Poole or that the federal government intends a termination for preventable accidents under these safety regulations to supersede the protections and policies of the Federal Unemployment Tax Act. See 26 U.S.C. §§ 3301-3311 (1988). We recognize that a willful act of misconduct under these regulations may warrant a denial of benefits, see, e.g., Golden Eagle Distributors, Inc. v. Arizona Dept. of Economic Security, 180 Ariz. 565, 885 P.2d 1130 (Ct.App.1994) (reversing award of benefits to driver who had tested positive for cocaine use, and thus, was disqualified from driving under motor carrier regulations), but no willful act was proven in this case.
Whether an employee works in a factory, a restaurant, or driving a truck, the employer may have good cause to terminate the worker for inattention or clumsiness that results in several preventable accidents. Merely having a company rule requiring employees to be careful, however, does not transform several negligence acts into misconduct. The *1160 statute defines "misconduct" to include "carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." § 443.036(26)(b), Fla. Stat. (1995). Recognizing that "negligence" is a mixed question of fact and law, we hold, as a matter of law, the referee's findings of fact do not support the legal conclusion that Mr. Poole's conduct rose to this level of carelessness. See Hall v. Florida Unemployment Appeals Comm'n, 700 So.2d 107 (Fla. 1st DCA 1997); Livingston v. Tucker Constr. & Eng'g, Inc., 656 So.2d 499 (Fla. 2d DCA 1995); see also Poppe v. Eclectic Bus. Machines, Inc., 661 So.2d 65 (Fla. 2d DCA 1995).
Reversed and remanded.
FULMER and QUINCE, JJ., concur.