**CAPITOL ENTERTAINMENT SERVICES, INC.,**
**Petitioner,**

v.

**Velvet L. McCORMICK, Respondent.**

**No. 09–AA–321.**

District of Columbia Court of Appeals.

Submitted Dec. 14, 2010.

Decided July 7, 2011.

Shelrese Best–Leach was on the brief for petitioner.

No brief was filed by respondent.

Before GLICKMAN and OBERLY, Associate Judges, and FERREN, Senior Judge.

GLICKMAN, Associate Judge:

An employee who is discharged from employment for misconduct is disqualified from receiving unemployment compensation under District of Columbia law. The duration of the disqualification depends on the gravity of the misconduct—on whether it was "gross misconduct" or "other than gross misconduct." But not all unsatisfactory job performance leading to termination amounts to disqualifying misconduct. Traditionally, the misconduct disqualification has been applied only when the employee's deviation from the employer's requirements was intentional, willful, or reckless. Nonetheless, it remains an unsettled question in this jurisdiction whether unacceptable job performance that is attributable to ordinary negligence or ineptitude also may constitute disqualifying misconduct.

That is the question in the present case. Velvet McCormick, an employee of petitioner Capitol Entertainment Services, Inc. ("CES"), was discharged for being involved in multiple driving accidents on

the job. In the order now under review, the Office of Administrative Hearings ("OAH") declared McCormick eligible for unemployment compensation despite CES's contention that she was discharged for misconduct. The Administrative Law Judge ("ALJ") rejected CES's argument because he found that CES proved only ordinary negligence on McCormick's part. We agree with the ALJ that ordinary negligence does not rise to the level of misconduct, gross or otherwise, under the District's unemployment compensation law, and we affirm the order under review.

## I. Facts

CES is a local tour bus company that also provides transportation services for the District of Columbia Public Schools. The company hired McCormick on March 19, 2008, as a licensed commercial bus driver. To ensure the safe operation of its vehicles, CES requires its drivers to "drive defensively" and adhere to specific safety guidelines set forth in the employee policy handbook. Among their other duties, drivers are directed to "[k]eep a constant visual scan going[;] ... [l]ook ahead, look to the sides, look behind[; and] ... [m]aintain a space cushion around [their] coach." Additionally, drivers must conduct pre-trip inspections of their buses and submit post-trip inspection reports. It is CES policy that drivers who have accidents may be suspended or discharged.

Although McCormick's job performance was otherwise "satisfactory"—so CES President John Best testified at the OAH hearing in this case—her involvement in accidents while operating her bus raised serious concerns about her ability to drive safely. The first accident occurred on August 28, 2008, when McCormick hit a gate as she was leaving the bus yard and damaged the left side and bumper of her bus. McCormick acknowledged in her accident report that she failed to check the left side of the bus before executing the turn. Best admonished McCormick after the incident to "be more attentive and exercise better judgment."

McCormick was blamed for a second accident on November 21, 2008, after the bus she drove that day was found to have sustained minor damage to its right rear side near the wheel. McCormick had not noted this damage in her pre-trip inspection of the bus, but she denied causing it. In her report, she characterized the circumstances of the accident as unknown. The ALJ ultimately found that the evidence of McCormick's involvement in any accident on November 21 was "not convincing," noting that "[n]either Mr. Best nor Claimant seemed to recall the circumstances that gave rise to the allegation or have a clear understanding of the error Claimant might have made to cause it." (CES does not challenge this conclusion on appeal.)

Lastly, on December 3, 2008, McCormick had another accident while attempting to exit the bus yard. Her bus was parked next to the drivers' lounge, and as she made a left turn to leave the area, the rear of her bus hit an air conditioning unit protruding from the lounge wall. The impact broke a window of the bus and significantly damaged both the air conditioner and the lounge. McCormick did not deny that she was at fault in failing to pull her bus far enough out of the parking space before making the turn (at the OAH hearing she described the parking lot as "very small and tight," with insufficient parking spaces for the buses and other vehicles). Best fired McCormick later that day for violating the company's safe driving requirements, citing her lack of "safety judgment." "I thought that we had no ... option other than to release Ms. McCormick," Best explained at the OAH hearing, "because of her failure to follow our poli-

cies as a defensive driv[er], our policies of exercising good operational judgment ... and our policy that when you have accidents, you are subject to suspension or termination."

In January 2009, McCormick submitted a claim for unemployment compensation to the District of Columbia Department of Employment Services. CES opposed the claim. Relying on information CES submitted, the claims examiner determined that McCormick was ineligible for unemployment benefits because she had been discharged for gross misconduct. Specifically, the examiner informed McCormick,

[y]ou were discharged from your job with your most recent employer for being involved in 3 bus accidents. Capitol Entertainment Services, Inc.['s] primary objective is to operate its vehicle[s] as safely as possible by requiring its drivers to always drive defensively. Your employer indicated that you were at fault. Under these circumstances, you are denied your benefits.

McCormick appealed the examiner's determination to the OAH. After a hearing at which she and Best testified, the ALJ found that McCormick was involved in two proven accidents "that could have been avoided if she had been more careful." But, the ALJ stated, he found no substantial evidence that the accidents, "both of which occurred at low speed in the bus yard, were the result of anything more than 'ordinary negligence.'" Concluding

that CES therefore had not met its burden of proving "misconduct" within the meaning of the unemployment compensation statute, the ALJ reversed the claims examiner's determination and found McCormick qualified to receive unemployment compensation benefits.

In its petition for review, CES asks this court to reinstate the claims examiner's ruling. CES argues that McCormick's failure on two separate occasions to perform essentially the same basic safety procedure in the operation of her bus amounted to misconduct—indeed, to gross misconduct—because it evinced a repeated disregard for the standards of behavior that CES had established and had a right to expect its drivers would observe.[1]

## II. Statutes and Regulations

▪ Under District of Columbia law, a terminated employee is ineligible to receive unemployment compensation benefits if the employer establishes by a preponderance of the evidence that the employee was discharged for misconduct.[2] Since 1993, the applicable statute has distinguished between "gross misconduct" and "misconduct, other than gross misconduct." For convenience we have referred to the latter as "simple misconduct."[3] A discharge for gross misconduct carries a more severe penalty and more demanding requirements for regaining eligibility for benefits than does a discharge for simple misconduct.[4]

---

1. According to CES, McCormick's errors also violated federal safety standards applicable generally to licensed commercial bus drivers.

2. *Morris v. United States Envtl. Prot. Agency,* 975 A.2d 176, 181 (D.C.2009); *see also* D.C.Code § 51–110(b) (2001); 7 DCMR §§ 312.2, 312.8 (2010).

3. *Morris,* 975 A.2d at 181; *Chase v. District of Columbia Dep't of Emp't Servs.,* 804 A.2d 1119, 1121 (D.C.2002).

4. An employee discharged for gross misconduct remains ineligible for benefits "until he has been employed in each of 10 successive weeks (whether or not consecutive) and ... has earned wages from employment ... equal to not less than 10 times the weekly benefit amount to which he would be entitled...." D.C.Code § 51–110(b)(1). By comparison, an employee terminated for simple misconduct is disqualified from receiving benefits only "for the first 8 weeks otherwise payable to the

The statute does not define the terms "misconduct," "gross misconduct," or "other than gross misconduct." Instead, it directs the District of Columbia Unemployment Compensation Board to "add to its rules and regulations specific examples of behavior that constitute misconduct within the meaning of this subsection."[5] The Board has adopted regulations that define gross and simple misconduct with examples of each.

The regulations state that the term "gross misconduct" means

> an act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows a repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee.[6]

"Other than gross misconduct" is defined more broadly to mean "an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest."[7] The term encompasses "those acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct."[8]

"Whether a fired employee's actions constituted misconduct, gross or simple, is a legal question, and our review of an agency's legal rulings is *de novo* . . . ."[9]

### III. Analysis

▮▮▮ By the term "ordinary negligence," we simply mean any "failure to exercise ordinary care," i.e., "the same caution, attention or skill that a reasonable person would use under similar circumstances."[10] Without more, proof of ordi-

---

individual or until the individual has been employed in each of 8 subsequent weeks (whether or not consecutive) and . . . has earned wages from employment . . . equal to not less than 8 times the weekly benefit amount to which the individual would have been entitled. . . ." *Id.* § 51–110(b)(2). (The latter provision states "[i]n addition" that "such individual's total benefit amount shall be reduced by a sum equal to 8 times the individual's weekly benefit amount.")

**5.** *Id.* § 51–110(b)(3).

**6.** 7 DCMR § 312.3. Illustratively, the regulations state that gross misconduct may include:
   a. Sabotage;
   b. Unprovoked assault or threats;
   c. Arson;
   d. Theft or attempted theft;
   e. Dishonesty;
   f. Insubordination;
   g. Repeated disregard of reasonable orders;
   h. Intoxication, the use of or impairment by an alcoholic beverage, controlled substance, or other intoxicant;
   i. Use or possession of a controlled substance;
   j. Willful destruction of property;
   k. Repeated absence or tardiness following warning.
   *Id.* § 312.4.

**7.** *Id.* § 312.5.

**8.** *Id.* The regulations say other than gross misconduct may include:
   a. Minor violations of employer rules;
   b. Conducting unauthorized personal activities during business hours;
   c. Absence or tardiness where the number of instances or their proximity in time does not rise to the level of gross misconduct;
   d. Inappropriate use of profane or abusive language.
   *Id.* § 312.6.

**9.** *Odeniran v. Hanley Wood, LLC,* 985 A.2d 421, 424 (D.C.2009) (internal quotation marks and citation omitted).

**10.** Standardized Civil Jury Instructions for the District of Columbia § 5.02 (2002 rev. ed. & Supp. 2010). As applied to persons having special training or experience, the duty to exercise ordinary care requires adherence to the standard of conduct expected of others in

nary negligence cannot establish *gross* misconduct within the meaning of our unemployment compensation statute, because decisions of this court make it abundantly clear that an employee's actions must be intentional, deliberate, or willful to amount to gross misconduct.[11] It is true that 7 DCMR § 312.3 defines gross misconduct as conduct that is *either* a "deliberate[ ] or willful[ ] violation" of the employer's rules or interests *or* in "disregard" of the employee's obligations or expected standards of behavior. Read literally, the word "disregard" could be taken to mean that virtually any deviation by an employee from the employer's requirements could be deemed gross misconduct. But as the examples of gross misconduct in § 312.4 strongly imply, "the types of conduct that constitute gross misconduct are narrower than what might come within a literal definition of that phrase."[12] We therefore have concluded that "the word 'disregard' carries

within it the same requirement [of intentionality] in this context."[13]

■ Whether proof of ordinary negligence suffices to establish simple misconduct for purposes of the unemployment compensation statute is another question, one our cases have left unsettled.[14] Neither the definition of simple misconduct in 7 DCMR § 312.5 nor the illustrations in § 312.6 mention negligence at all. However, unlike the definition of gross misconduct, the definition of simple misconduct contains no express requirement of deliberate or willful action, and it includes any "act or omission," intentional or not, in "breach" of the employee's obligations to the employer or "adversely affecting" a material interest of the employer. Similarly, the illustrations of simple misconduct include "[m]inor violations of employer rules" without qualification.[15] Read literally, the definition and illustrations encompass acts and omissions that result from ordinary negligence.

the same field. *See O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C.1982).

11. *See, e.g., Badawi v. Hawk One, Sec. Inc.*, 21 A.3d 607, 614 (D.C.2011) ("In order to conclude that the employee engaged in gross misconduct under our statutory scheme, the ALJ must first find that the employee acted deliberately or willfully."); *Odeniran*, 985 A.2d at 428 (describing "the requirement that the dismissed employee acted intentionally" as a "necessary ... condition for a finding of gross misconduct"); *Morris v. United States Envtl. Prot. Agency*, 975 A.2d 176, 182 (D.C. 2009) ("District of Columbia regulations specify ... that prior to a finding of gross misconduct, the employer must prove that the employee's actions were willful and deliberate."); *Chase v. District of Columbia Dep't of Emp't Servs.*, 804 A.2d 1119, 1124 (D.C.2002) ("In describing [claimant's] conduct as 'neglect of duty,' the Appeals Examiner suggested that she may have believed [claimant] had acted negligently in responding to the leak. If true, this would negate at least a finding of gross misconduct, because a violation of an employer's rule constitutes gross misconduct

only when done 'deliberately or willfully.' " (citing 7 DCMR § 312.3) (footnotes omitted)).

12. *Odeniran*, 985 A.2d at 426.

13. *Larry v. National Rehab. Hosp.*, 973 A.2d 180, 183 (D.C.2009).

14. *See, e.g., Chase*, 804 A.2d at 1124 n. 12 (noting that intentionality *"may* be required even for a finding of simple misconduct" (emphasis added)); *cf. Bowman–Cook v. Washington Metro. Area Transit Auth.*, 16 A.3d 130, 135 (D.C.2011) (quoting *Chase*, reversing ALJ's decision that claimant was terminated for simple misconduct, and remanding for factual finding as to whether claimant's behavior was intentional).

15. The regulations provide, however, that before an employee may be disqualified from receiving unemployment benefits based on a rule violation, the Director must determine that (a) the existence of the rule "was known to the employee," (b) the rule is "reasonable," and (c) the rule is "consistently enforced by the employer." 7 DCMR § 312.7.

Nonetheless, other considerations persuade us that the definition of simple misconduct cannot be read so broadly, and that ordinary negligence without more cannot constitute simple misconduct disqualifying a dismissed employee from receiving unemployment compensation benefits.

We first consider the evolution of the statutory disqualification of employees discharged for misconduct. The statutory predecessors of D.C.Code § 51–110(b) provided that any employee "discharged for misconduct" would be ineligible for unemployment benefits and until 1983, that the Unemployment Compensation Board would determine the duration of the disqualification "according to the seriousness" of the misconduct.[16] The statutes initially did not define the term "misconduct," leaving it for this court to do so.

In 1971, we adopted a definition widely accepted in other jurisdictions, holding that misconduct

> must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or

show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.[17]

This definition subsequently was incorporated almost verbatim in the statute.[18]

Importantly, the *Hickenbottom* court emphasized that each type of wrongdoing encompassed in the definition of misconduct "impute[s] knowledge to the employee that should he proceed he will damage some legitimate interest of the employer for which he could be discharged."[19] Thus, we stated in a later case, "violation of an employer's rules ... does not constitute 'misconduct' per se."[20] As a corollary, in 1983 we squarely held that "ordinary negligence" is not misconduct:

> While unsatisfactory work performance may amount to "misconduct" in some instances, implicit in this court's definition of "misconduct" is that the employee intentionally disregarded the employer's expectations for performance. Ordinary negligence in disregarding the employer's standards or rules will not suffice as a basis of disqualification for misconduct.[21]

The following year, we reiterated that " '[o]rdinary negligence' or an honest mis-

16. *See* D.C.Code § 46–111(b) (1981); *id.* § 46–310(b) (1973). The statute was amended in 1983 to provide for a uniform penalty regardless of the seriousness of the misconduct. *See* D.C. Law 5–3, § 2(q), 30 D.C.Reg. 1371, 1378.

17. *Hickenbottom v. District of Columbia Unemployment Comp. Bd.*, 273 A.2d 475, 477–78 (D.C.1971) (quoting 48 Am.Jur. *Social Security, Unemployment Insurance, Etc.*, § 38 (1943)).

18. *See* D.C.Code § 46–111(b)(2) (1987 Repl.). The definition remained in the statute until it was removed in the same 1993 revision that introduced the distinction between gross and

other-than-gross misconduct. *See District of Columbia v. Dep't of Emp't Servs.*, 713 A.2d 933, 937 (D.C.1998). Thereafter, the *Hickenbottom* language continued to influence the definitions of misconduct contained in the regulations—except, interestingly, that the regulations do not expressly mention negligence of any kind or quality.

19. *Hickenbottom*, 273 A.2d at 478.

20. *Williams v. District Unemployment Comp. Bd.*, 383 A.2d 345, 349 (D.C.1978).

21. *Keep v. District of Columbia Dep't of Emp't Servs.*, 461 A.2d 461, 463 (D.C.1983).

take in judgment 'will not suffice as a basis of disqualification for misconduct.' " [22]

The distinction between gross and simple misconduct was introduced in the 1993 revision of the disqualification provision.[23] The legislative history is "not enlightening" as to the reason for the amendment,[24] but there is no indication the Council intended, *sub silentio*, to overrule the settled definition of misconduct and broaden it to include ordinary negligence as a basis for denying unemployment compensation benefits. The overall continuity in the wording of the statute and the implementing regulations has persuaded this court that, as a rule, "[p]recedents under the *Hickenbottom* standard . . . retain their relevance." [25] So far as appears, the Council merely reinstituted in 1993 (via a different mechanism) the principle that the severity of the disqualification should vary depending on the seriousness of the discharged employee's misconduct.

Although the regulations that define and provide examples of simple misconduct are broadly worded, they are consistent with that understanding—they do not manifest a clear intention to enlarge the definition of misconduct to include ordinary negligence. It is telling that negligence is not mentioned in the definition of simple misconduct in § 312.5 or in any of the examples of such misconduct provided in § 312.6. (Nor, of course, is negligence mentioned in the regulations defining and illustrating gross misconduct.) Intentionality or conscious disregard amounting to recklessness is implicit in the examples of misconduct listed in §§ 312.4 and 312.6. An arguable exception is § 312.6's ambiguous statement that simple misconduct "may" include minor violations of employer rules. While that could be taken to mean negligent as well as intentional violations, a narrower reading is indicated by the other, more specific examples of simple misconduct listed in the regulation.[26] The ambiguous example is best understood by the company it keeps.[27] And given the settled meaning historically attached to the

---

**22.** *Jadallah v. District of Columbia Dep't of Emp't Servs.*, 476 A.2d 671, 675 (D.C.1984) (quoting *Keep* ). Cf. *Washington Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1217–18 (D.C.1999) (quoting *Keep* and finding no gross misconduct).

**23.** The change was included in temporary legislation that took effect on March 27, 1993, *see* D.C. Law 9–260, § 106, 40 D.C.Reg. 1007, 1019, and was made permanent later that year with the enactment of the "District of Columbia Unemployment Compensation Comprehensive Improvements Amendment Act of 1993," D.C. Law 10–15, § 106, 40 D.C.Reg. 5420, 5433 (Sept. 24, 1993).

**24.** *Washington Times*, 724 A.2d at 1220 n. 14 ("The proponent of the amendment stated only that the proposed statute 'provides for an eight week penalty for separation for simple misconduct with an eight week reduction in entitlement.' ").

**25.** *Id.* at 1217; *see also Chase v. District of Columbia Dep't of Emp't Servs.*, 804 A.2d 1119, 1122 (D.C.2002) ("Certain principles,

though, gleaned from our case law prior to and subsequent to the statutory revision, apply whenever misconduct of either kind is alleged." (footnote omitted)).

**26.** *See, e.g., Badawi v. Hawk One, Sec. Inc.*, 21 A.3d 607, 616 (D.C.2011) (noting that terminated employee's behavior "arguably amounted to '[c]onducting unauthorized personal activities during business hours' " under 7 DCMR § 312.6).

**27.** *Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 426 n. 2 (D.C.2009) (discussing examples of gross misconduct in § 312.4). "The maxim *noscitur a sociis*, that a word [or phrase] is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word [or phrase] is capable of many meanings in order to avoid the giving of unintended breadth" to laws or regulations. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961).

term "misconduct," we think it implausible to construe the regulations as extending beyond that meaning " 'to the outer limits of [their] definitional possibilities.' "[28] While § 312.7 provides that violation of a rule may support a denial of benefits only if the rule was known to the employee, reasonable, and consistently enforced,[29] that does not imply benefits may be denied on account of a merely negligent, unintentional rule violation. Merely because the conditions set forth in § 312.7 are necessary does not mean they are sufficient.

A second consideration reinforces the conclusion that misconduct requires a showing of more than ordinary negligence. "The District's unemployment compensation law was designed to protect employees against economic dependency caused by temporary unemployment and to reduce the need for other welfare programs."[30] The definition of disqualifying misconduct " 'must be resolved' " by reference to that statutory purpose.[31] And because the statute is " 'remedial humanitarian legislation of vast import,' " its provisions must be " 'liberally and broadly construed.' "[32] These principles counsel strongly against interpreting simple misconduct to extend to an employee's ordinary negligence in the performance of the job. It is one thing to say that an employee forfeits entitlement to unemployment benefits for intentional disobedience; it is quite another to say that an employee fired for unintentional incompetence does so. We long have understood that not every act for which an employer justifiably may dismiss an employee will support the employee's disqualification from receipt of unemployment benefits because of misconduct.[33] A rule that ordinary negligence constitutes misconduct would, inevitably, engender harsh results at odds with the statutory goal of alleviating the consequences of unemployment. It also would be at odds with the rule that prevails throughout the United States.[34]

■ We therefore hold that an employee's ordinary negligence in failing to perform work in accordance with the employer's standards, rules, or expectations is not misconduct, gross or otherwise, within the meaning of D.C.Code § 51–110(b).

This is not to say that negligence on the job never may rise to the level of misconduct, only that more than "ordinary" care-

**28.** *Odeniran*, 985 A.2d at 426 (quoting *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006)) (construing gross misconduct narrowly in light of examples).

**29.** See note 15, *supra*.

**30.** *Washington Times*, 724 A.2d at 1216 (citation omitted); *see also Hickenbottom v. District of Columbia Unemployment Comp. Bd.*, 273 A.2d 475, 477 (D.C.1971).

**31.** *Chase*, 804 A.2d at 1123 (quoting *Butler v. District of Columbia Dep't of Emp't Servs.*, 598 A.2d 733, 735 (D.C.1991)); *see also Badawi*, 21 A.3d at 615–16.

**32.** *Cruz v. District of Columbia Dep't of Emp't Servs.*, 633 A.2d 66, 69 (D.C.1993) (citation omitted).

**33.** *Jadallah v. District of Columbia Dep't of Emp't Servs.*, 476 A.2d 671, 675 (D.C.1984).

**34.** In general, the courts of other jurisdictions "have expressed the view, either directly or implicitly, that the employer must demonstrate that the employee's conduct was not the result of mere inefficiency, incompetence, or negligence to disqualify a former employee from receiving unemployment compensation based on the employee's misconduct; rather, the employer must prove some degree of culpability, wrongful intent, or disregard of the employer's interests." Shauna C. Wagner, Annotation, *Work–Related Inefficiency, Incompetence, or Negligence as "Misconduct" Barring Unemployment Compensation*, 95 A.L.R. 5th 329, § 2(a) (2002) (collecting cases).

lessness must be shown for it to do so. In *Hickenbottom* we stated that misconduct may be demonstrated by "negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." [35] Such aggravated conduct, commonly referred to as gross negligence or reckless disregard of the consequences, has been described in various ways, but it is typified by "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." [36] While the unemployment compensation program is tolerant of ordinary human frailty, it draws the line at such egregious carelessness. [37] Generally speaking, whether a discharged employee's conduct involved gross negligence or recklessness as opposed to ordinary negligence is a question of fact for the claims examiner and the administrative law judge to determine. [38]

■ Substantial evidence supports the ALJ's finding in the present case that McCormick was terminated for nothing more culpable than ordinary negligence. It is true that McCormick was involved in two separate bus accidents, which (the ALJ found) she would have avoided had she exercised reasonable care. [39] It also is true that driving a bus is a job in which safety is a paramount concern. But McCormick's two accidents occurred in the bus yard, not on the open road, and they stemmed from her simple failure to gauge properly the turning radius of the bus in relation to stationary objects. She was not speeding, driving recklessly, or endangering the lives of others. Although the accidents were similar, they involved different, and apparently somewhat difficult, driving maneuvers to exit the bus yard. McCormick's skill and "safety judgment" in executing those maneuvers may have been deficient, but there is no evidence that she was indifferent to safety or that she violated the rules of safe bus operation deliberately or consciously. "Merely having a company rule requiring employees to be careful ... does not transform several

---

35. 273 A.2d at 477–78 (internal quotation marks omitted).

36. W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 34, at 214 (5th ed. 1984). For example, addressing the District's statutory liability for gross negligence in the operation of an emergency vehicle on an emergency run, we have held that

> [T]he term "gross negligence" ... requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others. This standard has been held to connote that the actor has engaged in conduct so extreme as to imply some sort of bad faith. Where ... there is no evidence of subjective bad faith on the part of the actor, the extreme nature of the conduct may be shown by demonstrating that the actor acted in disregard of a risk "so obvious that [the actor] must be taken

> to be aware of it and so great as to make it highly probable that harm would follow."
> District of Columbia v. Walker, 689 A.2d 40, 44–45 (D.C.1997) (citations omitted).

37. See, e.g., Forbes–Lilley v. Maine Unemployment Ins. Comm'n, 643 A.2d 377, 379 (Me. 1994) (holding that tractor-trailer driver's aggravated negligence in ramming a vehicle she was attempting to pass on the highway, causing personal injury to the vehicle's driver and extensive property damage, was "tantamount to an intentional disregard of the employer's interests" that disqualified her from receiving unemployment benefits).

38. See Duggan v. District of Columbia, 783 A.2d 563, 569 (D.C.2001), reinstated in part en banc, 884 A.2d 661, 662 (D.C.2005).

39. McCormick's suspected involvement in a third, minor accident was not substantiated at the hearing.

negligence acts into misconduct."[40] Similarly, aggravated blameworthiness cannot be inferred from the mere fact that the safety rule McCormick violated was known to her,[41] nor from the nature of the accidents in this case, their temporal proximity, or the damage they caused.[42] In short, this is not a case "where a reasonable person in the actor's place would have been aware of great danger, and proceeding in the face of it [was] so entirely unreasonable as to amount to aggravated negligence."[43]

## IV. Conclusion

For the foregoing reasons, we hold that CES did not carry its burden of proving that McCormick was discharged for gross or simple misconduct. We affirm the judgment of the OAH that McCormick is eligible to receive unemployment compensation benefits.

*So ordered.*

---

40. *Poole v. J.B. Hunt Transp., Inc.*, 703 So.2d 1158, 1159 (Fla.Dist.Ct.App.1997).

41. *See Chase*, 804 A.2d at 1124 n. 12 ("The further conclusion that petitioner violated the employer's rule concerning unsatisfactory job performance 'which was known to him' does not clearly hold that the violation was even intentional, which may be required even for a finding of simple misconduct." (citations omitted)).

42. *See, e.g., Poole*, 703 So.2d at 1159–60 (reversing finding of misconduct in case of truck driver who was discharged after three "preventable" driving accidents in a two-and-a-half-month period, which resulted in damages totaling $6,600); *NEBCO, Inc. v. Murphy*, 280

Neb. 145, 784 N.W.2d 447, 454–56 (2010) (upholding finding that truck driver's four negligent driving accidents in three years did not amount to misconduct, gross or otherwise); *Myers v. Unemployment Comp. Bd. of Review*, 533 Pa. 373, 625 A.2d 622, 625–26 (1993) (holding that truck driver involved in three accidents over a period of four months did not engage in disqualifying misconduct because there was no evidence of intentional or deliberate conduct); *Foster v. Gatson*, 181 W.Va. 181, 381 S.E.2d 380, 380–82 (1989) (reversing finding of misconduct where driver was involved in two collisions causing over $3,000 in estimated damages).

43. Prosser and Keeton, *supra* note 36, at 214 (footnotes omitted).