*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-AA-517

JACQUELINE LYNCH, PETITIONER,

V.

MASTERS SECURITY, RESPONDENT.

On Petition for Review of a Decision of the
District of Columbia Office of Administrative Hearings
(DOES-196-13)

(Argued April 10, 2014                    Decided June 26, 2014)

*Drake Hagner*, with whom *Jennifer Mezey* and *John C. Keeney, Jr.* were on the brief, for petitioner.

*Jeffrey P. Brundage*, with whom *Edward R. Noonan* was on the brief, for respondent.

Before FISHER and EASTERLY, *Associate Judges*, and REID, *Senior Judge*.

Opinion of the court by Senior Judge Reid.

Concurring Opinion by Associate Judge Fisher at page 20.

REID, *Senior Judge*: Petitioner, Jacqueline Lynch, filed an unemployment compensation claim after she was terminated from employment by Respondent, Masters Security. A District of Columbia Department of Employment Services ("DOES") claims examiner disqualified her from receiving benefits on the ground

that she committed gross misconduct in that she "violated [Masters Security's] weapons handling policy by leaving her loaded gun in the ladies room unsecured." Sergeant Lynch filed an appeal with the Office of Administrative Hearings ("OAH"). After finding that Sergeant Lynch had not violated a company rule regarding the handling of her firearm, an OAH administrative law judge ("ALJ") affirmed the claims examiner's decision on the ground that Sergeant Lynch's "actions were reckless" because she went to work knowing that she was "distracted" by her mother's illness and failed to notice that she did not have possession of her weapon. The ALJ also denied Sergeant Lynch's motion for reconsideration. Sergeant Lynch lodged a petition for review with this court.

For the reasons set forth below, we reverse the agency decision. We hold that the ALJ's orders are not "in accordance with the law," because they are based on a reason for termination that Masters Security did not articulate; hence, the orders violate the fundamental principle that the denial of unemployment benefits to a claimant must be grounded on the reason specified by the employer. Although we agree with the ALJ that Masters Security did not prove a violation of its rules, we remand this case to OAH to determine whether the existing record reveals that Masters Security proved by a preponderance of the evidence that Sergeant Lynch's act of leaving her loaded weapon in a publicly accessible place – standing alone

and regardless if doing so violated her employer's rule – is the kind of gross negligence that this court has equated with intentionality due to the serious harm that could ensue.

## FACTUAL SUMMARY

The record before us indicates that Masters Security provides security services to various clients, including the federal Department of Health and Human Services ("HHS"). When Masters Security terminated Sergeant Lynch, she was a five-year employee holding the rank of sergeant, and she was assigned to the lobby of the HHS headquarters building.

During the hearing before the ALJ on February 25, 2013, Sergeant Lynch was represented by an attorney, and Masters Security was represented by Major Bernard Battle, Vice President of Operations for Masters Security. Captain Timothy Nelson, Sergeant Lynch's supervisor, testified that upon her arrival at work on the morning of January 14, 2013, Masters Security distributed a weapon to her. Before taking her post in the lobby, Sergeant Lynch went into a restroom. She removed her weapon upon entering a bathroom stall. Later, another Masters Security employee, Irene Burton, entered the same stall in the restroom, found a

weapon on the toilet paper dispenser and took it to Captain Nelson.[1]   Officer

Burton acknowledged that she once left her weapon in the bathroom but was not

terminated.

Captain Nelson determined that the weapon that Officer Burton found had

been issued to Sergeant Lynch.   He recommended that Sergeant Lynch be

suspended, pending termination, because "she left a [loaded] weapon in the

bathroom stall, which is [a] termination offense according to the employee

handbook of Masters Security."[2]   While Captain Nelson "was trying to handle [the

matter] in-house," another security officer called Major Battle to report the

---

[1] The ALJ admitted into evidence the incident statement written by Officer Burton on January 14, 2013 (Exhibit 214).   The statement read:   "[A]t 0806 Ofc. Burton went on break, using the restroom on the lobby level.  I found a 9 mm hand gun sitting on the toilet paper roll.  I wrapped it up and returned it to Cpt Nelson.  I left and continued with my break.  PSO Irene Burton."

[2] The record shows that Captain Nelson completed a personnel action form on January 14, 2013 (Exhibit 212), stating in part:  "[L]eaving your weapon in the [b]athroom and going back to post was neglect on your part and could have caused harm to an employee that may have picked up the weapon.  Therefore, after conferring with Major Battle [Captain Nelson's supervisor] you are suspended immediately pending further investigation."  The record also contains a termination report (Exhibit 201), dated January 23, 2013, reflecting "neglect of duty" as the reason for termination, with the following explanation:  "Officer Lynch left her weapon, which was loaded in the bathroom stall on top of the toilet paper dispenser, and walked back to post without weapon.  Another officer found the weapon . . . and turned the weapon in."  Neither of these exhibits was admitted into evidence.

incident. Major Battle contacted Captain Nelson and instructed him to "get [Sergeant Lynch] off of post immediately and send her home, and write up a personnel action form." Major Battle contacted Masters Security's Vice President, Kristine Nichols, the ultimate decision-maker. He later informed Captain Nelson that Sergeant Lynch would have to be terminated "because of the offense of leaving her weapon in the bathroom," "her loaded weapon in the bathroom." When the ALJ asked Captain Nelson if he had spoken with Sergeant Lynch "to find out why she had left the gun in the bathroom," he responded: "[S]he had told me that she had been going through some things. I believe she has a sick person in her family, and her mental state wasn't right, at the time." The ALJ said, "So, she was distracted? . . . Is that correct?" Captain Nelson answered, "Yes, Ma'am."

Major Battle attempted to question Captain Nelson about the nature of Sergeant Lynch's training, and to introduce documents about her training, but the ALJ said she did not believe there would be any dispute about training and that in her findings of fact, she would say that Masters Security "did not train [Sergeant Lynch] that leaving her gun in the bathroom was appropriate." When Major Battle said that was not acceptable, the ALJ asked why. Major Battle answered, "Because it states in her training manual that leaving a weapon - - you're never

supposed to leave a weapon, an unarmed weapon - -." The ALJ cut him off and inquired, "Isn't that what I just said?" Major Battle responded, "Okay, that's fine."

During her testimony, Sergeant Lynch explained that she "had a lot of things on [her] mind," and that her "mother has been very ill." She asserted: "I went into the restroom, used it and as I head out, I usually, I always touch my weapon before I come out of the restroom . . . . [B]ecause . . . that was on my mind, . . . I didn't even think about that. I didn't do it." After she received a call from Captain Nelson around 8:06 or 8:10 a.m., she realized that she had forgotten her weapon.

Prior to the hearing, Masters Security had submitted a list of exhibits and had included several documents in a folder that was given to the ALJ. After the testimony had been completed, the ALJ asked whether "everyone has presented all the evidence they wish to present." Major Battle attempted to reference the documents in the folder that had been given to the ALJ. The ALJ interrupted him to indicate that only one of the documents had been "moved in" and that was Officer Burton's statement about finding Sergeant Lynch's loaded weapon in the bathroom stall. The ALJ stated that she had all the evidence she needed, that there was no dispute that "the handbook says people should be fired for this"; there was evidence "to indicate that not everybody gets fired, when they leave their gun in

the bathroom"; and there was no dispute about training and licensing. In response to the ALJ's question as to whether there were any other facts she needed to know, counsel for Sergeant Lynch and Masters Security's representative both replied, "No."

The ALJ issued a final order on March 11, 2013. She concluded that: "Employer fired Claimant, a security officer, for leaving a loaded gun in a publicly-accessible restroom for 15 minutes because she was preoccupied." She disagreed with Masters Security's statement that Sergeant Lynch's action constituted "disqualifying rule violation misconduct." The ALJ declared that Masters Security "presented no credible evidence of any policy that would have required [Sergeant Lynch] to place her gun elsewhere than the stall shelf while she used the toilet," but that as the ALJ "understood the evidence, the problem was not where [Sergeant Lynch] placed the gun while she used the toilet, but that [she] left the bathroom, completely forgetting about the gun for 15 minutes."

During an exchange with Major Battle at the February 25, 2013, hearing, the ALJ stated: "So, the question is going to be why [Sergeant Lynch] did it and whether it was reasonable for [Masters Security], having apparently decided not to terminate some other employee for doing the same thing, to go ahead and

terminate her services for that reason, which seems the same." When Sergeant Lynch's attorney requested judgment as a matter of law, the ALJ denied the request saying, "even if this isn't a rule violation case, there [are] still some unanswered questions here." In her order, the ALJ gave her rationale for concluding that Sergeant Lynch had engaged in gross misconduct:

> The record evidence is that [Sergeant Lynch], although she knew that she was distracted by worry about her mother, failed for 15 minutes to notice that she did not have possession of her gun. Given the essential nature of her job, which was to use all her senses to monitor security in the area to which she was assigned, and given the fact that she had developed habits for safeguarding the weapon while she used the public bathroom, I conclude that [Sergeant Lynch's] actions were reckless, and constitute misconduct. Claimant's distraction was not a momentary lapse. She admitted that she remained so distracted that she never noticed that she did not have her weapon until she reported to the arms room at Captain Nelson's request. Simply put, those who are armed security personnel must also monitor themselves to ensure that they are not too impaired, either by drowsiness, distraction, or medication, to safeguard their weapons. [Sergeant Lynch] knew that she was distracted, but went to work anyway. It was sheer luck that her gun was found no more than 15 minutes later by another officer, instead of an unauthorized person. . . . Instead of notifying [Masters Security] that she needed a break to check on her mother, or that she needed to be absent from work, [Sergeant Lynch] abandoned a loaded weapon in a[] publicly-accessible place. Such conduct is egregious, as it presented huge risks to the persons she was supposed to

be protecting, especially considering the known security challenges at the site.

The ALJ "conclude[d] that [Masters Security] has demonstrated that [Sergeant Lynch's] discharge arose from gross misconduct."

Sergeant Lynch filed a motion for reconsideration; the ALJ denied the motion on May 1, 2014. After summarizing Sergeant Lynch's argument that "her action of leaving her loaded gun unattended in a restroom was unintentional," and that "she did not intend to place anyone in harm's way," the ALJ declared, "That is not the point." Rather, Sergeant Lynch "knew that she was distracted by worry, and knew that being on duty required her to at least safeguard, and be ready to use, her loaded weapon. Nevertheless, instead of admitting she lacked the concentration necessary to perform her duties that day, she began her shift." In doing so, the ALJ concluded, in pertinent part, that (1) Sergeant Lynch's actions were "consciously reckless, in much the same way they would have been had she been distracted or unable to properly pay attention to core job duties because she was sleepy, had taken medication, or was engaged in a personal conversation," and (2) "conscious disregard amounting to recklessness satisfies the intentionality requirement." Sergeant Lynch filed a petition for review with this court.

## ANALYSIS

Sergeant Lynch contends that the ALJ found that she unintentionally left her firearm in the bathroom because she was distracted, and consequently, the ALJ erred by using an unintentional act as the basis for finding gross misconduct. She maintains that gross misconduct (as well as simple misconduct) requires employee actions that are "intentional, deliberate, and willful." She further argues that a "failure to notice" that she left her firearm in the bathroom does not constitute "conscious disregard" or a "conscious choice of a course of action." Sergeant Lynch also contends that the ALJ erred by "treat[ing] Sergeant Lynch's decision to go to work while knowing she was distracted as if it were disqualifying conduct," even though that was not Masters Security's stated reason for terminating her employment.

Masters Security urges us to affirm the ALJ's determination, and asserts that the ALJ "made a finding of fact (which Sergeant Lynch unquestionably admits) that Ms. Lynch intentionally came to work distracted," and that "it would defy logic for her to argue that she 'unintentionally' reported to work." Masters Security further argues that Sergeant Lynch's "conduct violated [its] security interests in building security (and threatened the public at large)," and that

although the ALJ "found that the employer did not prove a violation of company rules," nevertheless, as this court declared in another case, "gross misconduct may still be found when rules exist and the employee's conduct 'disregards standards of behavior which an employer has a right to expect of an employee.'" Masters Security insists that "[Sergeant] Lynch intentionally came to work in such a clouded mental state that she abandoned her loaded firearm in a publicly accessible bathroom for 15 minutes," that the "ALJ's findings are not arbitrary, capricious, or an abuse of discretion, and they are supported by substantial evidence on the record."[3]

Sergeant Lynch responds, in her reply brief, by reiterating the basic arguments in her main brief. However, she emphasizes her contention regarding

---

[3] Masters Security also argues that Sergeant Lynch violated the company's rules regarding firearms. However, the ALJ specifically noted in the Final Order that Masters Security "presented no credible evidence of any policy that would have required [Sergeant Lynch] to place her gun elsewhere than the stall shelf while she used the toilet." Masters Security points to a number of documents that articulate policies for the safekeeping of firearms. However, none of these documents were admitted at the hearing and we may not consider them in support of Masters Security's contention here. *See Mack v. District of Columbia Dep't of Emp't Servs.*, 651 A.2d 804, 806 (D.C. 1994) ("[I]n reviewing the final decision of an agency, we are limited to the record on appeal and cannot consider issues or evidence not presented to the agency."). The burden was upon Masters Security to prove a rule violation at the hearing, 7 DCMR §§ 312.7, 312.8 (1994), and the company has presented nothing on appeal to challenge the ALJ's determination that it failed to meet that burden.

the ALJ's reliance on a reason for her termination that was not stated by Masters Security; she asserts, "it is settled law that the denial of unemployment compensation cannot be based on conduct that was not the actual basis of the employee's termination."

"Our review of OAH decisions is limited, and we must affirm unless the decisions of the OAH are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Savage-Bey v. La Petite Acad.*, 50 A.3d 1055, 1060 (D.C. 2012) (internal quotation marks and citation omitted). In addition, as we have said previously:

> we review OAH decisions solely to determine whether (1) [the ALJ] made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) [the ALJ's] conclusions flow rationally from its findings of fact. . . . We defer to the ALJ's factual findings as long as they are supported by substantial evidence. . . . Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. . . . However, we review the ALJ's legal conclusions of whether a terminated employee's actions constitute gross or simple misconduct *de novo.*

*Badawi v. Hawk One Sec., Inc.*, 21 A.3d 607, 613 (D.C. 2011) (internal quotation marks and citations omitted).

Our analysis of the issues presented in this case is guided by the following legal principles, statutory and regulatory provisions. An employee is disqualified from immediate unemployment benefits if that person is discharged for either gross misconduct or "other than gross misconduct." D.C. Code § 51-110 (b) (2012 Repl.).[4] "An employer seeking to prevent the payment of unemployment compensation bears the burden of proving that the employee engaged in misconduct (gross or otherwise)." *Gilmore v. Atlantic Servs. Grp.*, 17 A.3d 558, 563 (D.C. 2011) (quoting *Morris v. United States Envtl. Prot. Agency*, 975 A.2d 176, 181-82 (D.C. 2009)) (internal quotation marks omitted).

"Gross misconduct" is defined in the District's Municipal Regulations as any "act which deliberately or willfully violates the employer's rules, deliberately or willfully threatens or violates the employer's interests, shows repeated disregard for the employee's obligation to the employer, or disregards standards of behavior which an employer has a right to expect of its employee." 7 DCMR § 312.3. "Other than gross misconduct" is defined as any "act or omission by an employee

[4] The two-tiered nature of this statutory regime provides a more severe restriction on the benefits of employees discharged for gross misconduct than for employees discharged for simple misconduct. *Compare* D.C. Code § 51-110 (b)(1) (gross misconduct precludes eligibility for benefits until the employee "has been employed in each of 10 successive weeks"), *with* § 51-110 (b)(2) (simple misconduct precludes eligibility for benefits "for the first 8 weeks" in which they are otherwise payable).

which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest." 7 DCMR § 312.5. This type of "simple misconduct"—as we have often referred to it—includes "acts where the severity, degree, or other mitigating circumstances do not support a finding of gross misconduct." *Id.*

"[I]mplicit in [the] definition of 'misconduct' is that the employee *intentionally* disregarded the employer's expectations for performance." *Bowman-Cook v. Washington Metro. Area Transit Auth.*, 16 A.3d 130, 135 (D.C. 2011) (quoting *Washington Times v. District of Columbia Dep't of Emp't Servs.*, 724 A.2d 1212, 1217-18 (D.C. 1999)). We have "clarified that 'intentionality or its equivalent . . . is an element' of simple misconduct" as well as gross misconduct. *Scott v. Behavioral Research Assocs.*, 43 A.3d 925, 931 (D.C. 2012) (quoting *Hamilton v. Hojeij Branded Food, Inc.*, 41 A.3d 464, 476 (D.C. 2012)). Thus, "[w]ithout more, proof of ordinary negligence cannot establish gross misconduct within the meaning of [the District's] unemployment compensation statute, because decisions of this court make it abundantly clear that an employee's actions must be intentional, deliberate, or willful to amount to gross misconduct." *Capitol Entm't Servs. v. McCormick*, 25 A.3d 19, 23-24 (D.C. 2011). Furthermore, "[r]ead

literally, the definition of [other than gross misconduct] . . . encompass[es] acts and omissions that result from ordinary negligence," but "the definition of simple misconduct cannot be read so broadly, and . . . ordinary negligence without more cannot constitute simple misconduct disqualifying a dismissed employee from receiving unemployment compensation benefits." *Id*. at 24-25.

To establish that "more" is involved than ordinary negligence, and hence, that misconduct has been established, we have required "negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or [the] show[ing] [of] an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer." *Id*. at 28 (quoting *Hickenbottom v. District of Columbia Unemployment Comp. Bd.*, 273 A.2d 475, 477-78 (D.C. 1971)). This type of negligence, referred to as "gross negligence or reckless disregard of the consequences, . . . is typified by highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Id*. (internal quotation marks and citation omitted). This court also has declared that "[t]he term gross negligence requires such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the

rights and safety of others." *Id*. n.36 (quoting *District of Columbia v. Walker*, 689 A.2d 40, 44-45 (D.C. 1997)) (internal quotation marks omitted).

Not only does the employer bear the burden of proving that the employee is disqualified from eligibility for benefits due to gross or simple misconduct, but an ALJ's denial of benefits "must be based fundamentally on reasons specified by the employer for the discharge." *Smithsonian Inst. v. District of Columbia Dep't of Emp't Servs.*, 514 A.2d 1191, 1194 (D.C. 1986); *see also Brown v. Corrections Corp. of Am.*, 942 A.2d 1122, 1124 (D.C. 2008). An ALJ cannot "reject the employer's rationale and yet deny benefits on another misconduct theory independent of the employer's own determination." *Jones v. District of Columbia Unemployment Comp. Bd.*, 395 A.2d 392, 395 (D.C. 1978); *see also American Univ. v. District of Columbia Dep't of Labor*, 429 A.2d 1374, 1375 (D.C. 1981) ("[T]he employer's reason for discharging the employee must be scrupulously examined in all levels of the appeal process."); *Green v. District of Columbia Unemployment Comp. Bd.*, 346 A.2d 252, 257 (D.C. 1975) ("The existence of grounds upon which the employee might have been discharged is immaterial if they were not in fact the grounds of discharge."). Therefore, "we must overturn a denial of benefits erroneously based on conduct substantially different from that

which is specified as the reason for initial discharge." *American Univ.*, *supra*, 429 A.2d at 1375.

The record here is clear that Masters Security terminated Sergeant Lynch because she left her loaded firearm in the restroom. Captain Nelson testified that she "left a weapon in the bathroom stall, which is [a] termination offense, according to the employee handbook of Masters Security." But he also testified that Major Battle informed him that the reason Sergeant Lynch's employment was terminated was because she left her loaded weapon in the bathroom.[5]

The ALJ concluded that Masters Security had not proven a violation of its rules. Instead of continuing her final order by addressing whether Sergeant Lynch's act of leaving her loaded gun in the bathroom, standing alone, nevertheless constituted gross negligence, the ALJ fashioned her own theory of termination, the "distraction theory." That theory was based on Captain Nelson's answer to the ALJ's question about whether Captain Nelson had spoken to Sergeant Lynch "to find out why she had left the gun in the bathroom." In

---

[5] There was no testimony at the hearing that Masters Security's reason for releasing Sergeant Lynch from employment was because she chose to come into work while in a distracted state of mind.

response, Captain Nelson asserted that he believed Sergeant Lynch "has a sick person in her family, and her mental state wasn't right at the time." Upon hearing Captain Nelson's response, the ALJ said, "So, she was distracted?" Captain Nelson replied, "Yes, Ma'am." From this exchange, the ALJ declared that Sergeant Lynch "knew that she was distracted, but [she] went to work anyway," and "although she knew she was distracted by worry about her mother, [she] failed for 15 minutes to notice that she did not have possession of her gun." Thus, concluded the ALJ, Sergeant Lynch's "actions were reckless, and constitute misconduct," and further, "those who are armed security personnel must also monitor themselves to ensure that they are not too impaired, either by drowsiness, distraction, or medication, to safeguard their weapons."

The ALJ's final order and order denying reconsideration reflect a finding of gross misconduct, not because of the employer's stated reason for termination (given by Major Battle after his consultation with Vice President Nichols) – that Sergeant Lynch left her loaded weapon in the bathroom – but because Sergeant Lynch went to work knowing "she was distracted by worry about her mother," and consequently, she failed "to notice that she did not have possession of her gun," and that she had left her "loaded weapon in a[] publicly-accessible place." Masters Security appears to concede that this was the basis of the ALJ's finding of gross

misconduct; in its brief the company states that Sergeant Lynch's "abandonment of the loaded firearm was the direct result of her gross misconduct in reporting to work in a distracted state, not the act the ALJ relied on to find gross misconduct." In specifying one of the reasons why Sergeant Lynch's conduct constituted gross misconduct, Masters Security again maintained that "she deliberately and willfully reported to work distracted, causing her to abandon her loaded firearm in a publicly accessible bathroom." But, deliberately and willfully reporting to work in a distracted state was not Masters Security's articulated reason for terminating Sergeant Lynch, and this court's case law makes clear that an ALJ's denial of unemployment compensation benefits "must be based fundamentally on reasons specified by the employer for the discharge." *Smithsonian Inst.*, *supra*, 514 A.2d at 1194. Here, the ALJ's finding of gross misconduct is grounded, impermissibly, "on another misconduct theory independent of [Masters Security's] own determination." *Jones*, *supra*, 395 A.2d at 395. Consequently, because it is "not in accordance with the law," *Savage-Bey*, *supra*, 50 A.3d at 1060, we are constrained to reverse OAH's decision.

However, we remand this case to OAH, with instructions that the ALJ consider whether the existing record reveals that Masters Security proved by a preponderance of the evidence that Sergeant Lynch's act of leaving her weapon in

a publicly accessible place – standing alone and regardless if doing so violated her employer's stated rule – is the kind of gross negligence that we have equated with intentionality due to the serious harm that could ensue, that is, whether the stated act constitutes "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."[6] *Capitol Entm't Servs.*, *supra*, 25 A.3d at 28; *see also Bowman-Cook*, *supra*, 16 A.3d at 135.

*So ordered.*

FISHER, *Associate Judge*, concurring: I join Judge Reid's opinion, agreeing that we cannot uphold the ALJ's finding of gross misconduct because it is based on different reasons than those given by the employer for its decision to terminate Sergeant Lynch. Moreover, Masters Security failed to prove that Sergeant Lynch had violated its rules about the safeguarding of weapons. This is regrettable because Sergeant Lynch created a very dangerous situation by leaving her loaded weapon behind in a restroom accessible to the public. Where there is such a high

---

[6] The remand findings and conclusions should be based on the existing record because, as we said in *Smithsonian Inst.*, *supra,* "We see no need to reopen the hearing, thereby giving the employer a second bite at the proverbial apple; rather the [ALJ] on remand shall make the necessary finding based on the existing record." 514 A.2d at 1195.

risk of serious injury, ordinary negligence should be sufficient to support a finding of misconduct. If the current statutes and regulations do not permit that conclusion, they should be amended to do so.